UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| PAUL E. KELLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00056-JRS-DLP |
| | ) | |
| YVONNE PORTER, MHP; | ) | |
| BRION BERTSCH, MD; | ) | |
| WEXFORD MEDICAL SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

Indiana prison inmate Paul E. Keller brought this action asserting 42 U.S.C. § 1983 and state law claims against two prison medical providers, Yvonne Porter, MHP, and Brion Bertsch, MD, and their employer, Wexford Medical Services. Wexford contracts with the Indiana Department of Correction (IDOC) to provide medical services to Indiana inmates. The three defendants seek summary judgment on all claims against them. For the reasons explained in this Order, the defendants' motion is **granted**.

Mr. Keller alleges that he was medicated against his will on September 17 and October 17, 2017, with injections of the medication Haldol. He alleges that defendants Dr. Daniel Bertsch, MD, and Yvonne Porter, Mental Health Professional, ordered the injections. Mr. Keller also alleges that Wexford Medical Services – the IDOC contractor who employs Dr. Bertsch and Ms. Porter – failed to train and supervise them and had policies and practices in place that denied him a hearing on forced medication. The Court allowed Eighth Amendment deliberate indifference to serious medical needs and Indiana state law claims for assault, battery, negligence, and negligent infliction of emotional distress to proceed. Dkt. 5.

# I. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the Court may not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

Mr. Keller failed to respond to the defendants' summary judgment motion with admissible evidence or a rebuttal of the defendants' statement of uncontroverted facts. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. L.R. 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response

must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-86 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). The Seventh Circuit has "repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009); *see also Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008); *McNeil v. United States*, 508 U.S. 106, 113 (1993). This does not alter the summary judgment standard, but it does "reduce the pool" from which facts and inferences relative to the defendants' motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).[1]

## II. Facts of the Case

The following statement of facts was evaluated and formed pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and any disputed evidence are presented in the light reasonably most favorable to Mr. Keller as the non-moving party with respect to the motion

---

[1] Mr. Keller filed two collections of random papers, emails, court orders, and writings, none of which were sworn or confronts with competent evidence the uncontroverted facts set forth by the defendants. Dkts. 49 & 50. While the Court has made a diligent effort to review and synthesize assorted statements relevant to the motion for summary judgment, the Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3). The Seventh Circuit Court of Appeals has repeatedly held that district courts are not required to "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

At all times material to this lawsuit, Mr. Keller was an inmate at the Wabash Valley Correctional Facility (WVCF), held in the Special Needs Unit (SNU). Dkts. 1 & 44. Ms. Porter, a mental health professional, and Dr. Bertsch, a psychiatrist, were employees of Wexford of Indiana, LLC, the contract medical provider for the IDOC (named in this case as Wexford Medical Services). Dkt. 44, pp. 2, 5, & 9; dkts. 1 & 5.

Mr. Keller had been transferred from the New Castle Correctional Facility not long before he met Ms. Porter. Ms. Porter was assigned to be Mr. Keller's primary therapist and met him for the first time in October 2016. *Id.*, p. 3. At this first meeting, Mr. Keller signed consent for treatment forms and they discussed his condition and treatment. Ms. Porter would remain Mr. Keller's therapist and continue to treat him in 2017. *Id.*

Before his transfer to WVCF, Mr. Keller had been receiving involuntary Haldol injections at his prior facility. *Id.* These involuntary injections continued after his move to WVCF throughout the first six months of 2017. *Id.* He met regularly with Ms. Porter during this time and expressed his displeasure with receiving the injections. *Id.* Ms. Porter encouraged him to participate in the SNU program, engage in his treatment plan, and maintain compliance with his medications. *Id.*

To this end, on July 3, 2017, Ms. Porter met with Mr. Keller and informed him of the upcoming meeting of the involuntary treatment team. *Id.*, p. 4. Mr. Keller declined to attend the meeting, a decision documented by Ms. Porter and a correctional officer. *Id.* When the involuntary treatment team met two days later, Mr. Keller refused to attend at that time as well. *Id.* The team discussed the continuation of the order for involuntary administration of psychotropic medications for Mr. Keller. It was noted that Mr. Keller was a diagnosed paranoid schizophrenic with panic

disorder and depressive disorder. *Id.* While on his medications, Mr. Keller was successfully participating in the SNU treatment program which was designed to instill skills necessary for reintegration into the general population without medication. *Id.,* pp. 4-5. The involuntary treatment team decided to continue Mr. Keller's involuntary psychotropic medications due to his serious mental illness and history of becoming "gravely disabled and dangerous to himself and others" if he went off his medications. *Id.,* p. 5.

Following the July 3, 2017 team meeting, Dr. Bertsch, a staff psychiatrist, oversaw the involuntary injections given to Mr. Keller. *Id.* Dr. Bertsch soon tapered off the injections while Mr. Keller voluntarily took his medications as ordered. *Id.* But by August 24, 2017, Mr. Keller was acting erratic and agitated while in groups. *Id.* He appeared distressed and was unable to organize thoughts or statements. *Id.* Mr. Keller admitted he was not taking his medications. *Id.* He was placed on a temporary mental health hold. *Id.* Similar incidents were observed on September 1, 20, and 14, 2017, where each day Mr. Keller was observed acting strangely or in an agitated manner. *Id.*, pp. 5-6.

On September 22, 2017, after Ms. Porter had met with Mr. Keller several days in a row, and Ms. Porter learned that he had written several letters to others that threatened harm, Ms. Porter and Dr. Bertsch agreed that Mr. Keller should again receive an involuntary injection of Haldol. *Id.*, p. 6. The injection was given later that day. *Id.*

Ms. Porter and Dr. Bertsch met on September 28, 2017, and decided that Mr. Keller should continue to receive regular involuntary injections of Haldol. *Id.* When Ms. Porter met with Mr. Keller on October 25, 2017, he showed her grievances he had submitted reflecting an intention to sue her for placing him on the involuntary injections. *Id.* During the next few months, Mr. Keller

continued to display erratic behavior and sometimes admitted that he was not taking his medications as ordered.

On January 4, 2018, the treatment review committee met. *Id.*, p. 8. The seven members of the committee, of which four are doctors, considered Mr. Keller's condition. Mr. Keller appeared at this meeting where he stated that the light might cause him a seizure, called Ms. Porter a liar, stated he did not have depression, and disputed the diagnosis of schizophrenia. *Id.* The entire committee's decision was that Mr. Keller would benefit from continued involuntary administration of psychotropic medications and individual and group therapy. *Id.*

Ms. Porter and Dr. Bertsch submitted affidavits, cited in the brief references above, to support these facts. *See* dkts. 47 (affidavit of Ms. Porter) & 48 (affidavit of Dr. Bertsch). These facts have not been disputed by Mr. Keller with admissible evidence. *See* fn. 1, *supra.*

Mr. Keller testified in a deposition that he has been diagnosed as schizophrenic, but he believes that is wrong. Dkt. 45-1, p. 19. He has been receiving involuntary injections of Haldol since 2016, and monthly since September 2017. *Id.*, pp. 18-19, 67.

### III. Discussion

At this stage of the case, because discovery has concluded and the defendants contend that they are entitled to summary judgment and provide evidence supporting their argument, Mr. Keller must respond and provide evidence or argument to show that the case should proceed to trial. Fed. R. Civ. P. 56. Thus, the summary judgment stage is often described as the "put up or shut up" moment in a lawsuit. *See, e.g., Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).

### A.    Federal Constitutional Claims

Mr. Keller asserts Eighth Amendment medical care claims against the individual defendants. At all times relevant to his claims, Mr. Keller was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

"To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc). "[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even

though he could have easily done so.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (*quoting Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Plummer v. Wexford Health Sources, Inc.*, 609 F. App'x 861 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

Mr. Keller's allegations that he was medicated with Haldol against his will implicate the Fourteenth Amendment due process clause. A prisoner has "a significant liberty interest in avoiding the unwanted administration of anti-psychotic drugs under the due process clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210 (1990). The IDOC has a policy for the involuntary administration of psychotropic medication, *see* IDOC Health Care Service Directive 4.10, "Involuntary Psychotropic Medication Administration," quoted in *Perry v. Sims*, 2019 WL 1168110 at *2-3 (S.D. Ind. March 12, 2019), but Mr. Keller has not challenged the policy.

The unrebutted evidence is that Mr. Keller was provided an opportunity to attend the meetings of the involuntary treatment review committee before the two instances of involuntary administration of which he complains (September 17 and October 17, 2017). He declined to attend the September meeting, but he attended the October meeting. The committee members included physicians, but Dr. Bertsch was not one of them. The committee knew of Mr. Keller's diagnosis of schizophrenia, his erratic behavior when not medicated, and his potential for engaging in actions that threatened or harmed other inmates or staff. The committee unanimously decided that Mr. Keller should be involuntarily treated with psychotropic medications. Mr. Keller has provided no evidence that this decision was erroneous.

Finally as to the federal constitutional claims, Mr. Keller has provided no evidence that either Dr. Bertsch or Ms. Porter were deliberately indifferent to his serious medical needs. Insofar as Ms. Porter is concerned, the evidence is that while she is a mental health professional, she does not prescribe or administer medication.

Dr. Bertsch and Ms. Porter are entitled to summary judgment against Mr. Keller on his constitutional claims. These claims are dismissed with prejudice.

**B.      Policy and Practice Claim**

Next, Mr. Keller alleged that Wexford's policies and practices, including a failure to train its employees, violated his constitutional rights. However, he has not provided a policy to prove his claim, and presents no evidence to demonstrate a practice of custom that is violative of his constitutional rights.

To survive summary judgment on this claim, Mr. Keller must have produced evidence of "the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chi.*, 690 F.3d

829, 833–34 (7th Cir. 2012) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989)). Evidence of a failure to make a policy can also support such a claim. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017). But without an actual policy to point to, a plaintiff must produce evidence of multiple incidents of unconstitutional activity in order to maintain a claim against Wexford. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005).

Foremost, there is no evidence of an unconstitutional action. Even if there was evidence to support a constitutional claim against Dr. Bertsch or Ms. Porter, there is no evidence to support a policy or practice claim. Wexford is therefore entitled to summary judgment against Mr. Keller on this claim. This claim is dismissed with prejudice.

### C.    State Law Claims

Now that Mr. Keller's federal claims have been dismissed, the Court must decide whether it should exercise supplemental jurisdiction over his state law claims. The Court ultimately has discretion whether to exercise supplemental jurisdiction. *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010).

In Mr. Keller's case, the relevant factors clearly weigh in favor of the Court accepting supplemental jurisdiction. Because there is no evidence to support any of the state law claims, it would be a waste of judicial economy, convenience, and fairness, to the defendants and the state courts to have to address legal claims with no evidentiary support. Mr. Keller had a full and complete opportunity in this action to present *some* evidence to defeat the motion for summary judgment, but he was unable to do so. The defendants and the state courts should not have to relitigate these claims. Accordingly, the Court will accept supplemental jurisdiction over the state-law claims.

In contrast to Mr. Keller's lack of evidence, the defendants have put forth evidence and argument to demonstrate that there is no factual basis for these claims and they are entitled to judgment. Mr. Keller's state law claims essentially depended on whether the defendants had wrongfully administered Haldol to him involuntarily. The discussion in Section III-A above shows that no constitutional violation has occurred. For the same reasons – that they were entitled to do so – Mr. Keller's state law claims fail. Additionally, Mr. Keller provided no evidence of emotional distress or negligence, and he did not respond with his own evidence to the defendants' evidence that there was no assault or battery. *See* fn. 1, *supra*. The Court has attempted to find relevant argument, authority, or relevant record references in Mr. Keller's filings, but finds none. These claims were asserted in Mr. Keller's complaint, dkts. 1 & 5, but evidence to support them was never filed. Because there is a lack of evidence to support any of the state law claims, the Court does not need to address the defendants' potential liability individually. Without evidence to support these claims, they cannot proceed against any potential defendant. Accordingly, summary judgment is granted to all defendants and against Mr. Keller on all of the state law claims. These claims are dismissed with prejudice.

**IV. Conclusion**

For the foregoing reasons, defendants Brian Bertsch, Yvonne Porter, and Wexford Medical Services' motion for summary judgment, dkt. [43], is **granted**. All claims are dismissed with prejudice. Judgment consistent with this Order shall now be entered.

**IT IS SO ORDERED**.

Date: _____9/27/2019_____

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Paul E. Keller
922371
Pendleton Correctional Facility
Electronic Service Participant – Court Only

Douglass R. Bitner
Katz Korin Cunningham, P.C.
dbitner@kkclegal.com